UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RHONDA COURVILLE                                    CIVIL ACTION

VERSUS                                              NO. 10-1916

MICHAEL J. ASTRUE, COMMISSIONER                     SECTION "N" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Rhonda Courville, appearing pro se, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Act. 42 U.S.C. §§ 405(g), 423. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

## I.   PROCEDURAL HISTORY

Courville filed an application for DIB on December 4, 2007, alleging disability since August 1, 1999, due to a dehydrated protruding cervical disc, scoliosis, arthritis, and anxiety. (Tr. 97, 99, 104). After her application was denied, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 24, 2009. (Tr. 16-33). On October 6, 2009, the ALJ issued a decision denying plaintiff's application. (Tr. 10-15). After the Appeals Council denied review on June 18, 2010, the

ALJ's decision became the final decision of the Commissioner for purposes of this court's review.  (Tr. 1-5).

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff has included a statement of purported errors of facts and law in her pro se memorandum.  Record Doc. No. 11, at p. 3.  Only two of the purported assignments of error are comprehensible:

A.    "The Five Step evaluation process for determining claimant disabled 404.1505 failed to distinquish [sic] between insured and uninsured."

B.    "Step Three of sequential evaluation the Adjudicator did not determine combination of impairments physical and mental."

To the extent that plaintiff's memorandum asserts other errors but does not identify any comprehensible error, the court will review the entire record to determine whether substantial evidence supports the ALJ's findings and whether the ALJ applied the appropriate legal standards in evaluating the evidence.

Courville also attached to her memorandum a medical record dated September 27, 2010, which is not in the administrative record, and asked the court to consider this new evidence.  Record Doc. No. 11, at pp. 4, 6.  The court treats plaintiff's submission as a motion for leave to submit new evidence.  IT IS ORDERED that the motion is DENIED for the reasons stated below.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.   Based on her earnings records, Courville had sufficient quarters of coverage to remain insured through December 31, 2002.  Thus, she must establish disability on or before that date to be entitled to a period of disability and DIB.

2.   She did not engage in substantial gainful activity from her alleged onset date of August 1, 1999 through December 31, 2002, the date when she was last insured for DIB.

3.   Through the date last insured, plaintiff had a severe impairment consisting of disorders of the back.

4.   Through the date last insured, she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.   Through the date last insured, Courville had the residual functional capacity to perform the full range of sedentary work.

6.   Her medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of her symptoms prior to the date last insured are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

7.   Through December 31, 2002, the date last insured, plaintiff was unable to perform her past relevant work as a licensed practical nurse.

8.   On the date last insured, she was 39 years old, which is defined as a younger individual.

9.   Transferability of job skills is not material to the determination of disability because application of the Medical-Vocational Rules directly supports a

finding of "not disabled," regardless of whether Courville has transferable job skills.

10. Through December 31, 2002, plaintiff was able to perform jobs that existed in significant numbers in the national economy. Based on her age, education, work experience and residual functional capacity for the full range of sedentary work, a finding of "not disabled" is directed by Medical-Vocational Rule 201.28.

11. She was not under a disability at any time from the alleged onset date of August 1, 1999 through the last insured date of December 31, 2002.

(Tr. 10, 12-15).

IV.   ANALYSIS

A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's,

even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Perez, 415 F.3d at 461. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2009). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920;

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[1]  The five-step

inquiry terminates if the Commissioner finds at any step that the claimant is or is not

disabled.  Perez, 415 F.3d at 461.

    The claimant has the burden of proof under the first four parts of the inquiry.  If

she successfully carries this burden, the burden shifts to the Commissioner to show that

other substantial gainful employment is available in the national economy that the

claimant is capable of performing.  When the Commissioner shows that the claimant is

capable of engaging in alternative employment, the burden of proof shifts back to the

claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

---

[1]The five-step analysis requires consideration of the following:

    First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

    Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

    Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

    Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

    Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

B.    Factual Background

Courville, who was represented by an attorney at the hearing, testified that she was 45 years old and divorced. She said she was 5 feet 9 1/2" tall and weighed 185 pounds. She stated that she has a driver's license and is able to drive, but only drives a little. (Tr. 19-20).

Plaintiff testified that she graduated from high school and became a licensed practical nurse, but she no longer has her license because she is not supposed to lift more than 10 pounds and she would not be able to perform the duties of practical nurse with that limitation. She said she last worked in 1998 as an LPN and then she moved and lived with a man, but she did not work after that. She testified that she was in automobile accidents in 1999 and 2003. (Tr. 20).

Courville stated that the medication she takes for arthritis pain sometimes relieves her symptoms and that she needs to take more when the weather changes. She said she still hurts, but does not want to take any more medicine because she is on enough medications. She said the only side effect of her medications has been weight gain.

7

Plaintiff testified that her leg hurt during the hearing and that she would not be able to walk for very long if she stood up right then.  She said she would walk for longer periods if she could, to try to lose some weight, but she cannot walk very far.  She said that sometimes she can stand for a while, and other times she cannot stand for very long.  (Tr. 21).  She stated that her back and hip start to hurt if she sits for very long.  When asked to define "long," she said it could be as little as five minutes, but could be longer sometimes.

Courville testified that she had cartilage removed from her right knee, that the knee swells and her hip hurts when standing, and that her other leg sometimes goes numb.  She said she would work if she could.

Plaintiff testified that she does not receive any mental health treatment.  She added that a mental health doctor would probably want to give her more medicine, but she thinks she is on enough medications.

Courville stated that she does as little housework and shopping as possible.  She said that she washes the laundry, but that her son folds most of it.  (Tr. 22).

When asked at the hearing to list what her doctors had determined was then wrong with her, plaintiff testified that she has an infarct on the brain from an unknown cause, migraines, scoliosis, degenerative joint disease, osteoarthritis, nerve damage, a bulging disc and seven dehydrated discs in her lower back.  ( Tr. 22-23).  She said she recently

8

had injections in her back.  She confirmed that the medications list she submitted to the ALJ shows that she has been taking a lot of medications since 2000.  She testified that her condition has not improved and is worsening.

Courville said her condition is worse because she had to have injections in her back, her leg hurts more and she sleeps only three to four hours a night.  She stated that she does not drink and her medicines do not help her to sleep.  (Tr. 23).  Plaintiff testified that she has a pinched nerve in her neck, which prevents her from driving very far because her neck locks up and she cannot turn her head.  She said that her neck stiffens and her neck, legs and hip hurt when it rains.  She stated that arthritis causes a burning pain and her hip pain causes her to limp when it rains.  (Tr. 24).

Plaintiff testified that she was born with scoliosis and that the two car accidents hurt her back more than the scoliosis did.  She said that she was married until 1994 and worked as an LPN from 1993 to 1998.  She testified that she can read and write, but that sometimes her right arm goes numb and is useless.  She said she is right-handed.

Courville stated that she has anxiety and frustration because she cannot do what she used to do.  She said that her medicine caused her to gain weight and that her normal weight is 145-150 pounds.  (Tr. 25).  She stated that she cannot move around as much as she used to.

Plaintiff said that she had applied for jobs, but was never called back because she had to write down her medical conditions on the employment application.  She testified that she was so frustrated that she had tried to buy a gun to shoot herself, but could not buy one.  She stated that her treating physician, Dr. Smith, told her that she needs to see a psychiatrist, but she "figured, oh, well.  Why go see someone else?  You know[,] what they are going to do?  Put me on more meds?"  (Tr. 26).  She said Dr. Smith also told her that she needs anger management, but "he was screaming at me, so it's like I figured he needed it," and she did not go.

Plaintiff testified that her family had put her in Pineville[2] once because she overdosed in 1996 or 1997, but she did not stay long.  When asked if she had subsequently been to any other mental health hospitals, she responded, "No, I won't go. I don't need to.  I mean I tried, and it didn't work."  (Tr. 27).  She stated that her medications for anxiety and depression work sometimes, but not always, and that she sometimes needs to take two pills instead of one when she feels "jittery."

Courville testified that, on a typical day, she reads and watches television.  She stated that she feels frustrated because other people have lives and she does not, and it was not her fault that she was in two car accidents.  She said she has very few friends and

---

[2]The Mental Health Center of Central Louisiana is located in Pineville, LA.

has nothing to do with her family, because they think they are better than her, always tell her what she should do and could not handle the kind of pain that she has.  (Tr. 28-29).

Plaintiff stated that her 13-year-old son lives with her, attends the eighth grade and helps with the laundry and sweeping the house.  She said she does not do much cooking or cleaning, uses paper plates so they do not have to wash dishes, and lets her son stay in his school clothes after school so there is not so much laundry.  (Tr. 29-30).  She testified that she does not like to go shopping because people in the stores aggravate her and it takes too long at the cash register.  She said she is easily aggravated on some days, but not on others.  She said she watches movies on television, but does not go out to the movies because the chairs in the theaters hurt her back and she does not like crowds.  (Tr. 30).  She stated that her family will not have anything to do with her and that she keeps to herself.

When asked whether her doctors had recommended surgery, Courville replied that she was told they have more than 200 people waiting.  She said she had an MRI because she has severe headaches, after which she was told that she had an infarct on her brain.  She did not know what caused it.  (Tr. 31).  She testified that she had an angiogram and other tests on her heart, which "showed I had different things."  She said she used to do a lot of things, like coaching ball games for her youngest son, but now she does not even

want to sit in the bleachers and watch a game, because she "would have to sit, stand, be miserable." (Tr. 32).

C.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 15-19). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

D.    Plaintiff's Appeal

1.    Because the relevant time period is from the alleged onset date through the date last insured, plaintiff's first assignment of error lacks merit.

Courville applied for DIB, alleging an onset date of August 1, 1999. She was insured for DIB only through December 31, 2002. She contends in her memorandum that "[t]he Five Step evaluation process for determining claimant disabled 404.1505 failed to distinquish [sic] between insured and uninsured." This is incorrect. Courville had sufficient quarters of coverage to remain insured through December 31, 2002. The ALJ correctly stated that she must establish disability on or before that date to be entitled to a period of disability and DIB. As a matter of law, the period during which plaintiff was uninsured after December 31, 2002 is irrelevant to determining whether she was

disabled and eligible for DIB <u>during</u> her insured period.  No application for disability benefits <u>after</u> December 31, 2002 was before the ALJ or is before this court.

"[T]o prove that she is entitled to disability benefits, [plaintiff] must not only prove that she is disabled, but that she <u>became disabled prior to the expiration of her insured status</u>." <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992) (citing 42 U.S.C. § 423(a), (c)) (emphasis added); <u>accord</u> <u>Brunson v. Astrue</u>, 387 F. App'x 459, 460 (5th Cir. 2010); <u>Brown v. Astrue</u>, 344 F. App'x 16, 19 (5th Cir. 2009) (citing <u>Ware v. Schweiker</u>, 651 F.2d 408, 411 (5th Cir. 1981)); <u>Joubert v. Astrue</u>, 287 F. App'x 380, 382 (5th Cir. 2008); 20 C.F.R. §§ 404.315, 404.320, 404.131(a).

"Evidence showing a degeneration of a claimant's condition after the expiration of [her] Title II insured status is not relevant to the Commissioner's Title II disability analysis." <u>McLendon v. Barnhart</u>, 184 F. App'x 430, 432 (5th Cir. 2006) (citing <u>Torres v. Shalala</u>, 48 F.3d 887, 894 n.12 (5th Cir. 1995)).  A claimant who becomes disabled <u>after</u> the expiration of her insured status is not entitled to DIB.  <u>Dominguez v. Astrue</u>, 286 F. App'x 182, 186 (5th Cir. 2005); <u>Cook v. Astrue</u>, No. 7:07-CV-0170-BF, 2008 WL 4454044, at *6 (N.D. Tex. Oct. 2, 2008) (citing 42 U.S.C. §§ 416(i)(3), 423c; <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1080 (5th Cir. 1981)).  Thus, to obtain DIB, Courville must show that she was disabled <u>as of</u> December 31, 2002, when her insured status expired.

Much of plaintiff's memorandum in this court focuses on medical records and diagnoses dated after her last insured date of December 31, 2002.  However, any medical records dated after December 31, 2002 are relevant in this case only to the extent they might establish that Courville was disabled as of that date.  Copenhaver v. Astrue, No. A-09-CA-838-SS, 2011 WL 891617 (W.D. Tex. Mar. 11, 2011) (citing McLendon, 184 F. App'x at 431).   To the extent that medical evidence "related to a period after [December 31, 2002], the end of plaintiff's coverage period . . . . , [the evidence] did not describe [her] condition during the relevant time-frame."  Halley v. Barnhart, 158 F. App'x 645, 648 (5th Cir. 2005); accord Brown, 344 F. App'x at 20, 21; McLendon, 184 F. App'x at 432.

Accordingly, plaintiff's first assignment of error lacks merit.

> 2.   Plaintiff's motion to submit new evidence is denied.

Courville attached to her memorandum a copy of an electromyelogram (EMG) test result dated September 27, 2010, which is not in the administrative record.  Record Doc. No. 11 at p. 6.  She argues that this new medical record, which diagnoses "a mild right

ulnar[3] neuropathy[4] localized to the across elbow segment," supports her argument that she is disabled.

It is well established that this court may <u>not</u> issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate.  <u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C.A. § 405(g); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir. 1989)); <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995).   Accordingly, I must determine whether this case should be remanded so that the Commissioner may consider the allegedly new and material evidence.

The court may remand for consideration of new evidence only upon a showing that the evidence is new <u>and</u> material, <u>and</u> that good cause exists for plaintiff's failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); <u>Joubert v. Astrue</u>, 287 F. App'x 380, 383 (5th Cir. 2008) (citing <u>Ripley</u>, 67 F.3d at 555); <u>Garson v. Barnhart</u>, 162 F. App'x 301, 303 (5th Cir. 2006) (citing <u>Leggett v. Chater</u>, 67 F.3d 558, 567 (5th Cir. 1995)).

---

[3]The ulna is the inner, larger bone of the forearm.  <u>Dorland's Illustrated Medical Dictionary</u> 1908 (29th ed. 2000) (hereafter "<u>Dorland's</u>").

[4]Neuropathy is "a functional disturbance or pathological change in the peripheral nervous system."  <u>Id.</u> at 1212.

New evidence must be material to be the basis for a remand.  The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing Ripley, 67 F.3d at 555); accord Joubert, 287 F. App'x at 383.  This requirement means that the new evidence cannot merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling.  Id.; Garson, 162 F. App'x at 303.

In addition, "[f]or new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the [Commissioner's] determination." Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (quotations omitted) (citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)); accord Jones v. Astrue, 228 F. App'x 403, 406 (5th Cir. 2008) (citing 28 U.S.C. § 405(g)).

The medical record submitted by Courville is not material, as defined by the Fifth Circuit, for the following reasons.  First, the new evidence is dated September 27, 2010. This medical record reflects test results and diagnoses made more than seven years after plaintiff's last insured date of December 31, 2002.  This report is therefore immaterial because it does not relate to the period for which benefits were denied, which extended from August 1, 1999 to December 31, 2002 only.  See Joubert, 287 F. App'x at 383-84

16

(medical records dated two to five years after the expiration of plaintiff's insured status are not material); accord Sanchez v. Barnhart, 75 F. App'x 268, 270 (5th Cir. 2003) (citing Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001)); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

Second, plaintiff has failed to demonstrate a reasonable possibility that the EMG test results would change the outcome of the Commissioner's decision. Courville asserts in her memorandum that she has physical impairments consisting of scoliosis, cervical disc protrusion, degenerative disc disease, multiple disc dehydrations and a Schmorl's node[5] in her lumbar spine, arthritis in her right knee, migraine headaches, chronic pain, infarct[6] in the left mid-parietal brain and right ulnar neuropathy. The mere diagnosis of an impairment "does not establish a claimant's disability claims." Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)); accord Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Secretary of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Hames v. Heckler, 707 F.2d 162,

---

[5]A Schmorl's node is an "irregular or hemispherical bone defect in the upper or lower margin of the body of a vertebra." Dorland's at 1224.

[6]An infarct is "an area of coagulation necrosis in a tissue due to local ischemia resulting from obstruction of circulation to the area, most commonly by a thrombus or embolus." Id. at 894.

165 (5th Cir. 1983).  Plaintiff "must show that she was so <u>functionally impaired</u> by her [diagnosed impairment] that she was precluded from engaging in any substantial gainful activity." <u>Id.</u> (emphasis added); <u>accord</u> <u>Anthony v. Sullivan</u>, 954 F.2d 289, 293 (5th Cir. 1992).

In this case, plaintiff's lumbar symptoms and diagnoses listed above are reflected in the medical records dated before December 31, 2002 that the ALJ and the Appeals Council considered.  Based on that evidence, the ALJ found that Courville had a severe impairment, consisting of disorders of the back.  Therefore, to the extent that the new medical record documents pre-existing back disease, it is merely cumulative and there is no reasonable possibility that it would change the outcome of the Commissioner's decision.  <u>Lenoir v. Apfel</u>, 234 F.3d 29, 2000 WL 1568184, at *1 (5th Cir. Sept. 14, 2000) (citing <u>Haywood</u>, 888 F.2d at 1471; <u>Pierre</u>, 884 F.2d at 803).

To the extent that plaintiff's new evidence might show any increased symptoms or newly diagnosed conditions that developed <u>after</u> December 31, 2002, such as mild ulnar radiculopathy, the new medical record demonstrates at best a deterioration of a previously non-disabling condition.  There is no reasonable possibility that the new evidence would have affected the ALJ's determination that Courville was not disabled. "Remand [cannot] be based on new evidence of a subsequent deterioration of what was previously correctly held to be a non-disability condition."  <u>Lenoir</u>, 2000 WL 1568184,

18

at *1; accord McLendon, 184 F. App'x at 432.  If plaintiff has evidence that her

condition has deteriorated to the point that she became disabled after December 31, 2002,

she can use the evidence to apply directly to the Social Security Administration for

benefits for the appropriate period.  Shave, 238 F.3d at 597; Falco, 27 F.3d at 164 n.20.

Accordingly, Courville's motion to submit new evidence is DENIED.

3.   Plaintiff's second assignment of error lacks merit.

Courville argues that at "Step Three of sequential evaluation the Adjudicator did

not determine combination of impairments physical and mental."  This argument

misconstrues step three of the sequential evaluation, which requires the ALJ to determine

whether plaintiff had an impairment or combination of impairments that met or medically

equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1,

which are known as "the Listings."  This appendix "lists various impairments that the

Commissioner considers so severe as to preclude all substantial gainful activity.  Such

listed impairments constitute 'per se disabilities.'"  Frank v. Barnhart, 455 F. Supp.2d

554, 557 n.2 (E.D. Tex. 2006) (citing Barajas v. Heckler, 738 F.2d 641, 644 (5th Cir.

1984)).  If a claimant meets or medically equals a Listing, she is considered disabled at

step three of the evaluation without consideration of the remaining steps.  Frames v.

Barnhart, 156 F. App'x 688, 690 (5th Cir. 2005).

19

The ALJ found that, through the date last insured, Courville did not have an impairment or combination of impairments that met or medically equaled one of the Listings.  Whether an impairment or combination of impairments meets a Listing is a medical question that can be answered only by medical evidence.  20 C.F.R. §§ 404.1526(b), 416.926(b); McCuller v. Barnhart, 72 F. App'x 155, 158 (5th Cir. 2003); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); McKnight v. Astrue, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), report & recommendation adopted, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), aff'd, 340 F. App'x 176 (5th Cir. 2009).

Plaintiff has the burden of proof at step three of the sequential inquiry.  She has not identified any particular Listing nor pointed out any medical evidence to establish that she meets a Listing.  Accordingly, this assignment of error lacks merit.

4.    The ALJ's findings at step four are supported by substantial evidence.

Construing her arguments liberally, plaintiff may be asserting that the ALJ failed to consider her combination of impairments when determining her residual functional capacity at step four.  However, the record is clear that the ALJ considered the aggregate effects of her impairments, physical and mental, during the insured period.  To the extent that plaintiff argues in her memorandum that she cannot return to her past relevant work

as a licensed practical nurse, the ALJ held at the fourth step that she could not do so, and he proceeded to the fifth step of the sequential evaluation.  (Tr. 14).

The ALJ found at the fourth step that Courville had the residual functional capacity to perform the full range of sedentary work activity before her last insured date of December 31, 2002.  The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they are inconsistent with that residual functional capacity assessment during the relevant time period.

"The claimant's [residual functional capacity] assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record."  Perez, 415 F.3d at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  "The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."  Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985); accord Fontenot v. Astrue, No. 08-764, 2010 WL 1418591, at *2 (W.D. La. Mar. 18, 2010) (Hanna, M.J.), report & recommendation adopted, 2010 WL 1418658 (W.D. La. Apr. 7, 2010) (Melancon, J.); Cline v. Astrue, 577 F. Supp. 2d 835, 547-48 (N.D. Tex. 2008).

The ALJ stated several times that he had considered the entire record and the combined effects of Courville's impairments.  (Tr. 12, 14).  The ALJ's findings concerning plaintiff's residual functional capacity during the insured period are substantially supported by the medical evidence, including the opinion of her treating physician, to which the ALJ assigned great weight.  (Tr. 13).

The record reflects that Eddie Smith, M.D., treated Courville from September 9, 1999 through December 2007.  He provided a narrative report dated December 6, 2004, which summarizes his treatment of plaintiff since her automobile accident in August 1999.  As of March 7, 2001, Dr. Smith had diagnosed Courville with chronic back pain. He stated that an MRI of her lumbar spine on that date showed disc dehydration at three lumbar levels.  He restricted plaintiff's activity to lifting no more than ten pounds, with no repetitive bending or squatting and no crawling, climbing, twisting or prolonged standing.  Dr. Smith observed that Courville's condition had then remained unchanged until February 21, 2003, when she was involved in a second motor vehicle accident. (Tr. 189).  The lumbar MRI results on March 7, 2001 show that plaintiff had evidence of "mild disc dehydration" at three levels and a "small Schmorl's node," but "disc heights are preserved [and there] is no evidence of disc herniation or significant disc bulging."  (Tr. 234).  These records substantially support the ALJ's findings that Courville's back disorder, although severe, was not disabling.

The ALJ did not specifically mention plaintiff's allegations of anxiety in his opinion.  However, Dr. Smith's progress notes contain the only complaints of anxiety that plaintiff made during the relevant time period.  He diagnosed anxiety on only four occasions between April 3, 2001 and May 23, 2002, for which he prescribed Xanax.  (Tr. 217, 219, 220, 227).  He noted that Courville had been experiencing increased stressors during the earlier visits, including that she had moved and that her aunt was dying, but she reported that her "nerves are more settled" by March 4, 2002.  He continued to prescribe Xanax and she reported on May 23, 2002, November 4, 2002 and January 16, 2003 that she was "doing alright" and that her "medications help" without side effects. (Tr. 213, 214, 217).

A clinical psychologist, Lynette Causey, Ph.D., reviewed plaintiff's medical records and completed two Psychiatric Review Technique forms for the Commissioner on February 6, 2008.  On the first Psychiatric Review Technique form, Dr. Causey found that, for the time period ending on plaintiff's last insured date of December 31, 2002, the record contained insufficient evidence to determine whether Courville suffered from any medically determinable mental health impairment. (Tr. 286, 298).

In her memorandum in this court, plaintiff cites Dr. Causey's findings on the second Psychiatric Review Technique form that she meets Listing 12.06 for anxiety-related disorders.  (Tr. 272, 282).  However, Dr. Causey's second form specifically

assessed plaintiff's medically determinable mental health impairments only from November 29, <u>2006</u> through the date of the report, a time period that is not relevant to plaintiff's application for DIB during her insured period, which had expired almost four years earlier.

Dr. Smith's opinion, Dr. Causey's opinion on the first Psychiatric Review Technique form, the other medical records and the lumbar MRI results from the relevant time period are substantial evidence on which the ALJ properly relied in finding that Courville was capable of performing the full range of sedentary activity from her alleged onset date of August 1, 1999 through her date last insured of December 31, 2002. Sedentary work involves lifting no more than ten pounds at a time, occasionally lifting or carrying articles like docket files, ledgers and small tools, sitting for about six hours out of an eight-hour work day and occasionally walking or standing. <u>Holifield v. Astrue</u>, No. 09-31125, 2010 WL 4560524, at *4 n.1 (5th Cir. Nov. 10, 2010) (citing 20 C.F.R. § 404.1567(a); <u>Ripley v. Chater</u>, 67 F.3d 552, 557 n.25 (5th Cir. 1995)). These limitations are entirely consistent with Dr. Smith's opinion.

To the extent that Dr. Smith opined on December 6, 2004 and/or the other medical evidence in the record shows that plaintiff's condition worsened following her second automobile accident on February 21, 2003, those opinions and records are not material to determining her residual functional capacity <u>as of</u> December 31, 2002. Furthermore,

24

to the extent that Courville relies on Dr. Smith's opinion on December 6, 2004 that "she is chronically and indefinitely disabled and she is not able to engage in meaningful employment" (Tr. 190), the opinion is not binding on the ALJ, even if it is interpreted to apply to the relevant time period prior to December 31, 2002.  The law is well established that a physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of the Act, because that is a determination that may be made only by the Commissioner.  Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003).

> [S]ome opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination.  Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work."  These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." . . .  The doctor's opinion [that plaintiff could not work] was not a medical opinion within the meaning of the regulation.

Id. (quoting 20 C.F.R. § 404.1527(e), (1) & (e)(3)); see also Social Security Ruling 96-5p, 1996 WL 374183, at *2 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

Accordingly, plaintiff's assignment of error concerning the ALJ's step four determination lacks merit.

5.     The ALJ's step five finding was directed by the Commissioner's rules.

The Commissioner "bears the burden at the fifth step of establishing that the claimant is capable of performing work in the national economy." Loza, 219 F.3d at 399. "Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding." Thibodeaux v. Astrue, 324 F. App'x 440, 442 (5th Cir. 2009) (citation omitted). At the fifth step, the ALJ found that a finding of "not disabled" was directed by Medical-Vocational Rule 201.28, which provides that a younger individual (age 18-44) who is a high school graduate, has previous work experience at skilled or semiskilled jobs with skills that are not transferable and is capable of the full range of sedentary work, must be found "not disabled."[7]

The Commissioner may meet his burden at the fifth step to show that there is work that a claimant can do by referring to the Medical-Vocational Guidelines. If the claimant's impairments are solely exertional or her nonexertional impairments do not sufficiently affect her residual functional capacity, the Commissioner may rely exclusively on the Guidelines to determine whether there is other work in the economy that the claimant can perform. Loza, 219 F.3d at 398; Newton, 209 F.3d at 458; Crowley

---

[7]Medical-Vocational Rule 201.29 similarly provides that an individual with the same attributes whose skills are transferable must be found "not disabled." 20 C. F. R. Pt. 404, Subpt. P, App. 2, Table 1. This is why the ALJ found that transferability of plaintiff's skills was not an issue, since the same finding of "not disabled" would be directed either by Rule 201.28 or 201.29.

26

v. Apfel, 197 F.3d 194, 199 (5th Cir. 1999); Selders, 914 F.2d at 618.  When a claimant's characteristics coincide with those of an Appendix 2 rule that directs a finding of "not disabled," the Commissioner may use the rule to establish the existence of jobs in the national economy by administrative notice.  Id.; Harrell v. Bowen, 862 F.2d 471, 479 (5th Cir. 1988).

The ALJ's determination that Courville was capable of the full range of sedentary work during the relevant time period is supported by substantial evidence, as discussed in the preceding section.  Given plaintiff's concordance with the characteristics of Medical-Vocational Rule 201.28, the ALJ's reliance on the rule to make a finding of "not disabled" at the fifth step was required by law.

CONCLUSION

Plaintiff's motion for leave to submit new evidence is denied.  The ALJ's findings are supported by substantial evidence and he made no errors of law.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[8]

New Orleans, Louisiana, this _____30th_____ day of March, 2011.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[8]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective
December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.